UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ROOBIE ALI, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )   Case No. 4:21CV214 HEA |
| | ) |
| TRANS LINES, INC., et al., | ) |
| | ) |
|    Defendants, | ) |

**OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Volvo Group North America LLC's ("Volvo") Motion to Apply North Carolina Law, [Doc. No. 126]. Plaintiff has filed an opposition to the Motion. Defendants have filed a reply thereto. For the reasons set forth below, the Motion is granted.

**Relevant Facts and Background**

Plaintiff initially filed this action in the Circuit Court of Warren County, Missouri. Defendant Amtrust Insurance Company of Kansas, Inc. removed the matter on February 22, 2021 based on this Court's diversity of citizenship jurisdiction. 28 U.S.C. § 1332. Plaintiff has since resolved his claims against all defendants except Volvo.

1

Plaintiff's First Amended Complaint ("FAC") alleges two counts against Volvo: strict liability (Count I) and negligence (Count II).

Plaintiff Ali Roobie was an independent contractor with Defendant Trans Lines. Plaintiff would haul goods via road trucks and trailers for Defendant on a "daily and weekly basis consistently from approximately March of 2020 through Aug. 15, 2020." Plaintiff initially drove a semi-truck manufactured by International Trucks, but approximately a month after the beginning of Plaintiff and Defendant Trans Lines' relationship, the initial truck suffered an issue in need of repair. Defendant Trans Lines then provided a different truck for Plaintiff. This was a 2020 Volvo VNL64T semi-truck, which is the subject of these pleadings. The semi-truck was owned by Defendant Central Truck Leasing and was "leased or rented" to Defendant Trans Lines for "use in its motor carrier operations."

On August 15, 2020, Plaintiff was operating the semi-truck and an attached trailer hauling Proctor and Gamble toothpaste products "in or near Edwardsville, Illinois on the way to Costco in or near Salt Lake City, Utah." Plaintiff was operating the semi-truck "on Interstate Highway I-70 at or near the 192-mile mark in a westerly direction in Warren County, Missouri, wherein there are two (2) westbound lanes." Plaintiff came upon a vehicle in front of him in the right lane that "was traveling slower than normal traffic speed." Plaintiff switched to the left lane to pass the vehicle, and "suddenly and without warning or knowledge to

2

Plaintiff, a vehicle appeared out of the blind spot on the right side . . . which served to surprise and distract Plaintiff." Plaintiff then began to depart the paved lane and drive onto the "narrow shoulder on the left side of I-70." During this time, the semi-truck "failed to provide any warning of the lane/roadway departure, and no safety feature of the vehicle acted to assist Plaintiff to maintain a safe path of travel or return to the roadway surface." As Plaintiff "attempted to correct back to the paved surface," the semi-truck "entered a clockwise yaw and overturned in a ¼ turn driver's side leading roll on the paved surface of the interstate before skidding and coming to rest along the grass median of westbound I-70." As a result, Plaintiff was "partially ejected through the driver's side window" because of "a lack of an adequate passive restraint system." Plaintiff suffered "severe and permanent injuries" from the accident, "including the amputation of Plaintiff's left arm near the shoulder."

Plaintiff alleges that prior to the subject crash, Defendant Volvo Group designed, manufactured, assembled, inspected, tested, marketed, distributed, placed into the stream of commerce, and sold the Subject Semi-Truck in the normal course of business for use by the general public as ultimate consumers.

Plaintiff claims Volvo had a duty to the general public, including Plaintiff, to exercise reasonable care to design, manufacture, assemble, inspect, test, market,

3

distribute, place into the stream of commerce and sell reasonably safe trucks so as not to subject motorists to an unreasonable risk of harm.

The FAC further alleges Volvo owed to the general public, including Plaintiff, the duty to design, manufacture and sell vehicles that were not defective and/or unreasonably dangerous during a foreseeable collision and that Volvo breached its duty to exercise reasonable care in the design, testing, manufacture, and sale of the Subject Semi-Truck in multiple respects, including, but not limited to, the following:

    a. Failing to equip the Subject Semi-Truck with crash avoidance technology to prevent or minimize lane departure, highway departure, resulting yaw and/or rollover of the vehicle;

    b. Failing to equip the Subject Semi-Truck with a seat belt pretensioner and/or automatically retracting seat to prevent or minimize occupant excursion;

    c. Failing to equip the Subject Semi-Truck with laminated side window glass and/or rollover/side curtain airbag to prevent or minimize the risks of ejection and injury to the body including extremities;

    d. Failing to provide adequate warnings and/or other proper notice to alert customers and users regarding the hazardous condition presented by the lack of crash avoidance technology and the risks of injury from such hazardous condition;

e. Failing to provide adequate warnings and/or other proper notice to alert customers and users regarding the hazardous condition presented by the lack of an adequate passive restraint system and the risks of injury from such hazardous condition;

f. Failing to provide adequate testing and/or inspection so as to ensure the vehicle was reasonably suited for its intended purpose and provided adequate safety features to prevent or minimize a reasonably foreseeable accident;

g. Failing to provide adequate testing and/or inspection so as to ensure the vehicle was reasonably suited for its intended purpose and provided adequate safety features to prevent or minimize injuries in a reasonably foreseeable accident; and/or

Plaintiff alleges that as a direct and proximate result of Defendant Volvo Group's negligent acts and omissions, Plaintiff suffered severe and permanent personal injuries, including the amputation of his left arm at or near his shoulder area. Plaintiff also claims he has sustained significant damages, including past and future medical and rehabilitation expenses; past and future loss of income or impairment to earning capacity; conscious pain, suffering and psychological anguish; loss of enjoyment of life; and impairment of general health, strength, and vitality.

Volvo moves the Court for an Order finding that North Carolina law applies to the substantive issues in this case.

## Legal Standard

A federal court exercising its diversity jurisdiction applies the choice of law rules of the state where it sits. *Prudential Ins. Co. of Am. v. Kamrath*, 475 F.3d 920, 924 (8th Cir. 2007). In tort litigation, including product liability claims, Missouri follows section 145 of the Restatement (Second) of Conflict of Laws, which employs the "most significant relationship" approach. *Kennedy v. Dixon*, 439 S.W.2d 173, 184-85 (Mo. 1969); *Dorman v. Emerson Elec. Co.*, 23 F.3d 1354, 1359 (8th Cir. 1994). It states:

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to that occurrence and the parties under the principles stated in § 6.
>
> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>
> (a) the place where the injury occurred,
> (b) the place where the conduct causing the injury occurred,
> (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
> (d) the place where the relationship, if any, between the parties is centered.
>
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Restatement (Second) of Conflict of Laws § 145 (Am. Law Inst. 1971).

6

Section 146 essentially creates a presumption that the law of the jurisdiction in which the injury occurred will govern. *Dorman*, 23 F.3d at 1358–59 (applying sections 145 and 146 under Missouri law where an injured Canadian saw operator brought a products liability action against a Missouri saw designer). This presumption may be rebutted, "if, as demonstrated by the principles enunciated in section 6 in light of the contacts listed in section 145, another state has a more significant relationship to the accident and the parties with respect to the particular issue in dispute." *Id.* "Under Missouri law, it is not the number of contacts with a particular state that is crucial to the analysis but the quality of these contacts." *Id.*

Finally, section 6 states in relevant part that:

(2)  When there is no such directive, the factors relevant to the choice of the applicable rule of law include

> (a) the needs of the interstate and international system,
>
> (b) the relevant policies of the forum,
>
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>
> (d) the protection of justified expectations,
>
> (e) the basic policies underlying the particular field of law,
>
> (f) certainty, predictability and uniformity of result, and
>
> (g) ease in the determination and application of the law to be applied.

7

The threshold question for the Court here is, is there an actual conflict of law? "Under Missouri law, a conflict of laws does not exist unless the interests of the two states cannot be reconciled." *Interstate Cleaning Corp. v. Com. Underwriters Ins. Co.*, 325 F.3d 1024, 1028 (8th Cir. 2003). The parties do not dispute there is an actual conflict between Missouri and North Carolina laws regarding strict liability and negligence.  Accordingly, the Court must apply the "most significant relationship" test as set forth in the Restatement (Second) of Conflict of Laws to determine the applicable law. See *Reid v. Doe Run Res. Corp.*, 74 F. Supp. 3d 1015, 1023-24 (E.D. Mo. 2015) A.O.A., 350 F. Supp. 3d at 847.

To determine which state has the most significant relationship, Missouri courts must consider: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered. Id. at § 145(2). "These contacts are to be evaluated according to their relative importance with respect to the particular issue." *Id*.

8

Under Missouri law, "the place of the injury is unimportant to the selection of the applicable law if it is fortuitous in that it bears little relation to the occurrence and the parties." *Dorman,* at 1360. A fortuitous contact is one in which the plaintiff is injured in the jurisdiction while briefly passing through or passing over it (such as on a train or airplane trip) "so that the place of the injury is inconsequential." *Id.*  This is precisely the situation in the matter before the Court. Neither of the parties have any connection with the state of Missouri.  Plaintiff was travelling from Illinois to Utah and had to pass through Missouri to get there.

The Court holds the presumption is rebutted because the principles enunciated in section 6 in light of the contacts listed in section 145 demonstrate that North Carolina has a more significant relationship to the issues. Since this is a personal injury action, section 6 factors (a), (d), and (f), which concern the needs of the interstate and international system, the protection of justified expectations, and the certainty, predictability, and uniformity of result, are implicated only minimally, if at all. *Dorman*, 23 F.3d at 1359. Similarly, paragraphs (b), (c), and (e), which address the relevant policies of the forum, the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, and the basic policies underlying the particular field of law, do not

9

demonstrate that Missouri has a more significant relationship to the accident than North Carolina does. As for the final factor, (g), the ease in the determination and application of the law to be applied, there is nothing to indicate this factor cannot be satisfied in the Court's application of North Carolina law. Additionally, a court should not let its own lack of familiarity with foreign law tilt the choice of law calculus. *Bell Helicopter Textron, Inc. v Arteaga*, 113 A.3d 1045, 1060 (Del. 2015).

An analysis of the factors establishes North Carolina to be the state with the most significant relationship to the issues herein. Volvo is a Delaware corporation with its principal place of business in North Carolina. As such, North Carolina has an interest in seeing its laws applied to its resident corporations. The specific law limiting strict product liability is applicable to claims against North Carolina product makers. All of Volvo's design and testing occur in North Carolina. The specific semi-truck was designed and tested in North Carolina. Missouri has no interest in the design, testing, manufacture, or sale of the product at issue.

The order for the semi-truck came from CIT Trucks, LLC, an independently owned and operated Volvo Trucks dealer located in Loves Park, Illinois, to Volvo in North Carolina. An invoice was issued from Volvo offices in Greensboro North Carolina, to the ordering dealer in Illinois. Volvo issued a Manufacturer's

Certificate of Origin from its officer in North Carolina to the purchasing dealer in Illinois.

Upon sale of the truck, Volvo issued a written warranty from North Carolina. Warranty claims would have been electronically submitted by an authorized Volvo dealer to Volvo headquarters in Greensboro, North Carolina, and would have been reviewed and handled from Volvo's North Carolina offices. On balance, North Carolina, rather than Missouri, has the most significant relationships with the issues herein.

In his opposition to this motion, Plaintiff requests the Court to reopen discovery and allow him to amend his complaint to conform to North Carolina law, including presenting a breach of warranty claim.  Defendant opposes this request. Extensive discovery has already occurred. Plaintiff fails to advise the Court of what discovery he would need to conform the complaint to North Carolina law. Without substantiation that additional discovery is needed, this request will be denied.  The Court agrees, however, that Plaintiff should be allowed to amend the complaint to reflect this very recent request for application of North Carolina law. Prior to the filing of the motion, Volvo gave no indication that it disputed application of the presumed law of the jurisdiction in which the accident occurred. Allowing application of North Carolina law without allowing Plaintiff to amend his complaint would serve to put Plaintiff at a disadvantage which he did not

11

create. Plaintiff, therefore, will be allowed to file an amended complaint. As such, the current trial setting of July 24, 2023 is no longer feasible. The trial setting will therefore be stricken, to be reset at a later date.

### Conclusion

Based upon the foregoing, the record and the facts surrounding the accident at issue, under the most significant relationship analysis, North Carolina has the most significant relationship and therefore, North Carolina law will be applied for the resolution of this matter.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Volvo Group North America, LLC's Motion to Apply North Carolina Law, [Doc. No. 126], is granted.

**IT IS FURTHER ORDERED** that Plaintiff is given 14 days within which to file an amended complaint.

**IT IS FURTHER ORDERED** that the trial setting of July 24, 2023 is stricken, to be reset at a later date.

Dated this 14th day of July, 2023.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE